(No. 1599, April 28, 1914)

H. B. JONES, Receiver, etc., Appellant, vs. C. H. RANKIN, et al., Appellees.

### SYLLABUS BY THE COURT.

1. The additional liability of a stockholder depends upon the terms of the statute creating it, and, being in derogation

of the common law, the statute cannot be extended beyond the words used.

P. 60

2. Sec. 14, Chap. 68, S. L. 1887, construed. Held that it imposes no individual liability upon stockholders in a savings bank for the debts of such bank, where the original subscribers for such stock paid the full par value thereof to the corporation.

P. 64

3. The general corporation act (Laws 1905, Chap. 79) did not repeal or change the liability of stockholders under Chap. 36, S. L. 1884, and Chap. 68, S. L. 1887.

P. 64

Appeal from the District Court, Quay County. Thomas D. Leib, Presiding Judge. Affirmed.

RENEHAN & WRIGHT, Santa Fe, N. M., for Appellant.

Statutes imposing stockholders' liability are not penal statutes, but contractual in nature. 98 Pa. St. 505; 40 Ohio St. 507; 2 Wall 10.

Statutes creating individual liability should be construed remedially, so as to suppress the mischief and advance the remedy. 8 Ga. 468; 2 Edw. (N. Y.) 304; 1 R. I. 376; 5 Fed. Cas. No. 2485; 3 Am. St. Rep. 836.

Properly there are no canons of statutory construction such as (1) strict construction, (2) liberal construction. 8 Ga. 468; 47 Me. 530; 10 Cyc., p. 666.

The construction which gives, so far as possible, full and fair effect to intention of Legislature is correct construction. Briggs vs. Penneman, *supra*; 14 Grey, 488; 71 Pa. St. 293; 34 Cal. 503; Sec. 4777, Thompson on Corp.

Decisions construing statutes to impose double liability. 10 Cyc. 678; 8 Cow. (N. Y.) 86; 8 Abb. Pr. 192; 4 Hun 137; 131 Mo. 560; 5 Mo. App. 225; 5 So. 120; 12 Ill. App. 457; 11 N. E. 339; 6 Mich. 441; 31 Tenn. 1; Const. Minn. Art. 10, Sec. 3; 50 N. W. 1110; 59 Ill. 270; 24 Wend. 473; 18 N. Y. 199.

The word "subscriber," as used in Section 273 of the Compiled Laws of 1897, includes stockholders. 3 Sandf. Ch. 466, 493; 67 N. H. 301; 86 Mo. 72; 95 Pa. 505, 516; Laws 1905, Chap. 79, Sec. 24; Angell & Ames on Corps, Sec. 534; 91 U. S. 64, 70; 12 Am. Digest 967; Gay vs. Kayes, *supra*; 12 Cent. Digest, Sec. 967; Sec. 273 C. L. 1897.

Reed Holloman, Tucumcari, N. M., for Appellees.

Statutes imposing a liability upon stockholders for debts of a corporation, being in derogation of the common law, are strictly construed. 125 Ga. 710; 36 Me. 22; 45 Me. 507; 9 Cush. 192; 14 Gray 488; 41 N. J. L. 52; 46 N. Y. 119; 77 N. Y. 1; 51 N. Y. S. 1109-1117; 135 N. C. 410-418; 85 Pa. 75-78; 71 Pa. 293-297; 105 Pa. 569-573; 19 R. I. 597-599; 95 Tenn. 634-660-663; 43 Vt. 502; 25 W. Va. 184-199; 122 Mich. 1-24; 4 Allen 233-235; 10 Pick. 370-372; 58 Neb. 701; 81 Minn. 294; 68 Mass. 98; 27 Mass. 370; 72 Pa. St. 331; 115 Mass. 380; 65 Ill. 298-301; 118 Mass. 532; 17 R. I. 51-53; 137 Mass. 516; 88 Tenn. 401-403; 8 Ga. 468; 192 U. S. 386; 14 Wend. 59; 38 Mich. 257; 120 U. S. 747; 1 N. M. 1-27; 30 N. H. 390-403; 34 N. H. 124; 3 Sandf. Ch. 466-493; 86 Me. 72; 7 Oreg. 329; 35 Md. 15-30-31; 14 Wend. 20; 28 Mich. 130; 134 Ill. 536; 65 Mich. 111-126; 71 Minn. 367; 44 Neb. 279; Cook on Corp. Vol. 1, Sec. 10; 82 Me. 397-405; 6 B. & C. 341; 105 Fed. 179; 6 Mich. 441; 49 Tex. 123; 96 Fed. 160; 123 Ga. 787; 121 Pac. 609; 9 Cush. 192; Sec. 2900 C. L. 1897; Sutherland Stat. Con., Vol p. 705.

### OPINION.

ROBERTS, C. J.—The only question presented by this appeal is the proper construction of Section 14, Chapter 68, S. L. 1887, (Sec. 273, C. L. 1897) which reads as follows:

"The stockholders of any such corporation or association shall only be individually liable to the extent of the

par value of the shares of stock subscribed for by them, except as otherwise herein próvided."

This section is a part of the Savings Bank Act. and applies only to the liability of stockholders in such corporations. The exception referred to in the section, fixes the liability of officers, agents, etc. of such institution, who receive deposits, or assent to their reception, or who contract debts or assent to their creation, after knowledge that such institution is insolvent or in failing circumstances. The exception is of no consequence, so far as this case is concerned.

The appellant is the receiver of the International Bank of Commerce, of Tucumcari, New Mexico, an insolvent institution, incorporated under Chap. 68, S. L. 1887, as a savings bank. He instituted this suit against the appellees, who were stockholders in said bank at the time it became insolvent, to recover from them an assumed statutory liability to the extent of the par value of the shares of stock held by each of said stockholders. The complaint set forth all the facts leading up to the appointment of the appellant as receiver of the bank; the indebtedness, insufficiency of assets, and that appellees all became stockholders by purchase of stock from the original subscribers to the capital stock or their assignees, for which stock the full par value had been received by the corporation. To the complaint the appellees demurred, on the ground that they were not liable under the statute above quoted. The demurrer was sustained by the court and appellant elected to stand upon his complaint. Judgment was thereupon entered for appellees, dismissing the complaint. From such judgment this appeal is prosecuted.

The first question discussed by counsel on either side, is the rule of construction to be applied to the statute. Appellant contending that the statute is remedial and should be liberally construed, while appellees claim that a statute imposing a liability upon stockholders for the debts of the corporation being in derogation of the common law, should be strictly construed. Under the common law, a stockholder was not liable for the debts of the corporation, where the corporation had received the full par

value of the stock. This being true, it necessarily follows that the additional liability of the stockholder depends upon the terms of the statute creating it, and, being in derogation of the common law, the statute cannot be extended beyond the words used. Brunswick Terminal Co. vs. National Bank of Baltimore, 192 U. S. 386. The rule of strict construction is applied to such statutes by the great majority of the courts in this country, as will be seen by reference to the cases cited in Note 7, Sec. 214, Vol. 1, Cook on Corporations (7th Ed.) The author says:

"Inasmuch as all statutes creating an additional liability on the part of the stockholders are in derogation of the common law, they are to be strictly construed."

Appellant relies upon the case of Carver vs. Brainstree Mfg. Co., 2 Story, 432, which supports his view as to the proper rule of construction; but as this case is so at variance with the almost universal holding of the courts, including the Supreme Court of the United States, and our own territorial Supreme Court (Perea vs. Bank, 6 N. M. 1), we must decline to follow it.

The statute then must not be extended beyond the words used, and it says that the stockholders of any such corporation shall only be individually liable to the extent of the par value of the stock SUBSCRIBED for by them. No one of the appellees herein were subscribers to the capital stock of the insolvent corporation, according to the accepted definition of the term "subscriber." Cook on Corporations (7th Edition), Sec. 10, says:

"A subscriber is one who has agreed to take stock from the corporation on the original issue of such stock."

In the case of Thames Tunnel vs. Sheldon, 6 B. & C. 341, the word "subscriber" is defined, and held to mean only such persons as have entered into an express contract to take up a certain number of shares, on the original issue.

If it be conceded that the statute imposes an additional liability upon stockholders, over and above and independent of the original par value of the stock, it must be apparent that such liability extends only to such stock-

holders as were subscribers to the capital stock of the corporation.

"When men subscribe for the stock of a company, it is for so much stock as the company still owns and has not parted with. Stock, which has been issued to or passed into the ownership of outside parties, cannot be subscribed for; it is not then the subject matter of subscription." Bates et al. vs. Great Western Tel. Co., 134 Ill. 536.

In Seaboard National Bank vs. Slater, 105 Fed. 179, the court draws a sharp distinction between stock subscribed for and stock held without subscription.

The case of Libby vs. Toby, 82 Me. 397, illustrates the distinction. The court says:

"A fair inference to be drawn from the language of the statute is that of a transaction or contract with the corporation in accepting, subscribing for or agreeing to take stock, and not one between individuals in the purchase of stock in open market. Had the legislature intended to make the remedy as broad as that contended for by the plaintiff, and thus render the defendant liable as a 'stockholder' upon all stock held or owned by him, regardless of the manner in which he may have obtained it, it would have been an easy matter to have so expressed its meaning."

In like manner we are justified in saying that had the territorial legislature intended to impose a liability upon all stockholders, irrespective of whether they had purchased their stock in the open market, or had secured it by subscription to the capital stock, it would have been an easy matter to so have expressed its meaning. By Sec. 9, Chap. 36, S. L. 1884, the legislature clearly and unmistakably imposed upon all stockholders in banks of discount and deposit an individual liability for the debts of the corporation. Many of the provisions of the act providing for the organization of savings banks are identical with the provisions found in said Chapter 36, S. L. 1884, and, had the legislature intended to create the same stockholders liability, it would doubtless have employed the same language.

In the case of Reid vs. DeJarnette, 123 Ga. 787, the

Supreme Court of Georgia was called upon to construe the language of a special act of the legislature, incorporating the Putnam County Banking Company. The act provided: "Each stockholder in said corporation shall be individually liable for the debts of the corporation to the amount of his or her unpaid subscription to the capital stock of the corporation, and for an additional amount equal to his subscription." The court says:

"The question presented for determination is: Was it the purpose of the General Assembly to impose this individual liability upon each and every person who might become a shareholder of the corporation, by subscribing to its capital stock or by purchase of shares issued to another, or otherwise succeeding to the holdings of a stockholder who had ceased to be a member of the corporation; or was the legislative intent to fix the statutory liability upon such stockholders only as became such by subscribing to the capital stock? The term 'stockholder' is not synonymous with that of 'subscriber'; each has a distinct definite technical meaning; the latter is employed to denote one who becomes bound by a subscription to the capital stock of a corporation. It is to be presumed that the members of the General Assembly knew what was an 'unpaid subscription to the capital stock' of a corporation, when they declared that each stockholder could be called on by creditors to pay, not only his 'unpaid subscription to the capital stock of the corporation,' but also an 'additional amount equal to his subscription.' If effect be given to the letter of the act, then the liability imposed was upon those who became stockholders through their voluntary act in subscribing to the capital stock of the banking company and assuming responsibility for the payment of its debts, not only to the extent of their respective stock subscriptions, but for double the amount thereof. * * * The corporation itself was made primarily liable for the payment of its debts; those who subscribed to its capital stock were called on by the General Assembly to be its backers, its guarantors. The argument is advanced by counsel for the plaintiff in error that unless all stockholders (however they may have acquired

their holdings) be held liable for the debts of the corporation, its creditors may not be ·able to collect their demands against it, since many if not all of the subscribers to its capital stock may now be dead, and such estates as they left fully administered. Conceding that such may be the case, we do. not feel justified in so stretching the words used in the act of incorporation as to bring within its operation all stockholders of the bank, whether they became shareholders by subscribing to its capital stock, or by way of succession from those who originally became bound to pay double the amount of their stock subscriptions, if necessity so to do should ever arise. We cannot assume that the General Assembly contemplated that those who accepted the charter and organized under it could relieve themselves of the liability they voluntarily assumed by subsequently transferring their stock to others who might, or might not, be solvent and able to respond to the demands of debtors of the corporation. Nor does the act of incorporation provide any scheme whereby this liability might be shifted upon stockholders who purchased stock upon the faith that the act was to be understood as meaning neither more nor less than was said; nor is there any suggestion in the act of a compounding of liability, so that a creditor could treat each successive shareholder as an additional guarantor and, at his election, call upon either past or present stockholders for payment of his demand, or enforce satisfaction from all as one collective body answering to the description of 'stockholders.' We try to construe, not to legislate. No good reason has been advanced why the words used in the statute under construction should not be given their usual signification and the conclusion reached, that, while an individual liability was imposed upon each of the original shareholders, no provision was made for any further protection of creditors in the event the affairs of the bank might eventually be conducted by persons who succeeded to the rights of the subscribers to its capital stock and in this manner became stockholders"

The reasoning of this case is directly applicable to the statute under consideration, in so far as the liability of

the appellees is involved. Our conclusion therefore is, that no individual liability is imposed upon a stockholder in a savings bank, for the debts of the corporation, where such stockholder was not a subscriber to the capital stock of such corporation but purchased his stock in the open market. The question as to the liability of the original subscriber is not involved in this case, and is therefore not before us for decision.

Appellee further contends that the general corporation law of 1905 (Chap. 79 S. L. 1905) repealed all stockholders liability under Chap. 36, S. L. 1884 and Chap. 68, S. L. 1887. Under said general act, the common law liability only is imposed by Sec. 22, while Sec. 23 provides a method by which the stockholder may be relieved of that liability. Sec. 131 extends the provisions of the general act to certain corporations organized under special acts, including the act in question in this case, and further provides for the organization of such corporations under the general act. But the same section also provides:

"But, Provided, However, That this act shall not be held to divest the corporations incorporated under any of said acts of any rights, privileges or franchises which such corporations now have, and all the provisions of said act as to organization, powers, capital stock, stockholders, liability and suspension shall apply to any company organized under this act and doing business in the Territory of New Mexico."

Thus clearly evidencing an intention to make the provisions of the general act apply to such corporations, only insofar as the provisions of the general act did not conflict with the exceptions stated. The proviso left intact the provisions of the special acts as to organization, powers, capital stock, stockholders, liability and suspension. This is made even more manifest by the provisions of the next succeeding section of the general act, which provides:

"The acts referred to in the last preceding section shall not be held to be repealed by this act, but the provisions of this act and the provisions of said acts shall be con-

strued together as one act, and the general provisions of this act relating to the management, control, reports, amendments, stock liability, levy upon property or corporations, levy and sale of stock, and all other general provisions contained in this act which can be enforced consistently with the provisions of the said special acts hereinbefore referred to shall be held to apply to all such corporations."

For the reasons stated, the judgment of the lower court is affirmed, and it is so ordered.

<hr>

## SYLLABUS BY THE COURT.

